## MECHANICS AND TRADERS BANK *v.* ROWLY et al.

A provision in a statute incorporating a bank, enacted under the constitution of 1812, " that it shall have the like privileges granted to it in making loans on mortgage, in taking security, and in enforcing payment, as are now accorded by law to the Bank of L—." will confer upon the former all the privileges granted to the latter, without any further specification. Decision in *Bank of Louisiana* v. *Farrar*, 1 An. R. 49, affirmed.

APPEAL from the District Court of Concordia, *Curry*, J.

*F. H. Farrar*, for the plaintiffs. *Benjamin* and *Micou*, for the appellant. This suit was brought on a note and mortgage executed by the defendants, then husband and wife, *in solido*, in favor of the plaintiffs. At the time of the loan a communjty of acquêts existed between the parties, but before the institution of suit it had been dissolved, and they were separated from bed and board. Judgment was rendered against the husband by default. The wife filed an answer denying her liability upon the contract, and pleading the separation, &c. Judgment was rendered against her, and she appealed.

Was *Mrs. Rowly* legally bound by the note and mortgage executed *in solido* with her husband ? In claiming that she is not liable, she relies upon article 2412 of the Civil Code :

" The wife, whether separated in property by contract or by judgment, or not separated, cannot bind herself for her husband, nor conjointly with him, for debts contracted by him before or during the marriage."

The plaintiffs, on the other hand, insist that this general principle of law is not applicable to mortgages contracted under their charter, and rely upon the following section :

" And further, that the said corporation shall have the like privileges granted to it in making loans on mortgage, taking security, and enforcing the payment thereof, as are now accorded by law to the Bank of Louisiana." Sec. 25, act 1 April, 1833. Acts, p. 134.

The clause in the charter of the Bank of Louisiana, which is said to be incorporated into the charter of the plaintiffs by this reference, is the 32d section of the act of April 9th, 1824. 1 Moreau's Dig. p. 55. It is in the following words :

" In all hypothecary contracts or obligations entered into by any individual with or in favour of the said president, directors and company of the Bank of Louisiana, according to the true intent and meaning of this act, it shall be lawful for the wife of such individual to bind herself jointly and *in solido* with him ; and in such case the property and rights of said wife, either dotal or of any other

description, shall be affected by said contracts or obligations, *provided* the said <span style="float:right">MECHANICS</span>
wife be of the age of majority at the time of entering into such contracts or <span style="float:right">AND TRADERS</span>
obligations." <span style="float:right">BANK</span>

Was it the intention of the legislature by this reference, to incorporate into <span style="float:right">*v.*</span>
the charter of the plaintiffs this section of the charter of the Bank of Louisiana ? <span style="float:right">ROWLY.</span>
The protection granted to married women, is part of the settled policy of the
land. The system from which our jurisprudence is derived, and our Codes
themselves, do not leave the rights of the wife at the mercy of the husband.
Aware of the great and almost unlimited control usually exercised by the hus-
band over the wife, it was deemed necessary, for the public good, that the laws
should intervene for the protection of the weaker party. This policy, however,
has been abandoned by our legislature to subserve the interest and wishes of
many of the banks; but in these cases it has been done by direct and explicit
legislation. The Bank of Orleans and the Louisiana State Bank were not ex-
cepted from the general provisions of the laws. See their charters, 1 Moreau's
Digest, pp. 62 and 68. The 32d section of the charter of the Bank of Louisi-
ana, is copied at length and verbatim into the charters of the Consolidated As-
sociation, &c., sec. 23. 2 Moreau's Dig. p. 404. Of the Canal Bank, act of
5th March, 1831, sec. 23. Acts, p. 54. Of the Union Bank, act of April, 2d,
1832, sec. 25. Acts, p. 62. Of the Citizens' Bank, act of 1833, sec. 25. Acts
p. 190. Of the Commercial Bank, act 1st April, 1833, sec. 30. Acts, p. 162.
Of the Gas Light and Banking Company, act 1st April, 1835, sec. 29. Acts, p.
105. Of the Exchange and Banking Company, act 1st April, 1835, sec. 27.
Acts, p. 203. Of the Atchafalaya Railroad and Banking Company, act 10 March,
1835, sec. 24. Acts, p. 50. Of the New Orleans and Carrollton Railroad and
Banking Company, act 1st March, 1836, sec. 9. Acts, p. 27. Of the Merchants'
Bank, act 25th February, 1836, sec. 26. Acts, p. 61. And of the Improve-
ment and Banking Company, act 9th February, 1836, sec. 12. Acts, p. 49.
The only charter similar in this respect to that of the plaintiffs', is the charter
of the City Bank, 3d March, 1831 (Acts, p. 34), the 8th and 18th sections of
which make reference to the privileges of other banks; and it is worthy of re-
mark that the charter of the Canal Bank, passed by the same legislature, and
approved only two days after that of the plaintiffs, has the provision in contro-
versy copied at large, and *verbatim*.

Let us next consider some of the rules of interpretation applicable to statutes
in general, and especially to charters of privileged companies: " Statutes are
to be construed in reference to the principles of the common law, for it is not to
be presumed that the legislature intended to make any innovation upon the
common law, further than the case absolutely required." Kent's Com. p. 464,
3d ed. 1836. Dwarris on Statutes, 695. Among the rules proposed by M.
Portalis, to be prefixed to the Code Napoléon, were the following : " La pré-
somption du juge ne doit pas être mise à la place de la présomption de la loi.
Il n'est pas permis de distinguer lorsque la loi ne distingue point, et les excep-
tions qui ne sont point dans la loi ne doivent être suppléées." On these rules M.
Toullier observes : " Malgré l'utilité et la justesse reconnues de ses maximes,
ils furent supprimés, parce que, dit on, tout ce qui est de doctrine appartient à
l'enseignement du droit et aux livres de jurisconsultes."

It is however more particularly with special statutes, those granting peculiar
privileges to certain classes or persons, those derogatory to the general policy of
the law, that we have here to deal ; and we assume it to be a principle that all
such statutes are to be strictly construed, as if they were of a penal character.
Chief Justice Marshall, speaking of a corporation, says : " Being the mere crea-
ture of law, it possesses only those properties which the charter of its creation
confers upon it, either expressly or as incidental to its very existence." *Dart-
mouth College* v. *Woodward*, 4 Wheat. 636. " A power derogatory to pri-
vate property must be construed strictly, and not enlarged by intendment."
*Anon.* Lofft, 438. " Ambiguous words, in a private act of parliament, incorpora-
ting a public company, are to be construed against the company and in favor of
private property." *Scales* v. *Pickering*, 4 Bing. 448. *Barrett* v. *Stockton et al.*
2 Mann, and Gran. 134. Acts of parliament which confer privileges upon a
company, and profess to give the public certain advantages in return, are to be
construed strictly against the company, and liberally in favor of the public."
*Parker* v. *Great Western Railroad Company*, 7 Mann, and Gran. 253. " In
the construction of statutes made in favor of corporations or particular persons,

MECHANICS
AND TRADERS
BANK
*v.*
ROWLY.

and in derogation of common right, care should be taken not to extend them beyond their ·express words or their clear import. They cannot take away a common law right, unless the intention is manifest; and, when not remedial, are not to be extended even by equitable principles." *Sprague* v. *Birdsall*, 2 Cowen, 420. "Private statutes, made for the accommodation ·of particular citizens or corporations, ought not to be construed to affect the rights or privileges of others, unless such construction results from ·express words, or from necessary implication." *Parsons*, C. J. *Coolidge* v. *Williams*, 4 Mass. Rep. 154. "The rights of the crown can never be taken away by doubtful words or · ambiguous expressions, but only in express terms." Dwarris on Statutes, p. 706. "To bring a case within the statute, it should be not only within the mischief contemplated by the legislature, but also within the plain intelligible import of the words of the act." "A *casus omissus* can in no case be supplied by a court of law, for that would be to make laws." Ib. p. 711. "It is a well settled rule of law, that every charge upon the subject must be imposed by clear and unambiguous language." Ib. 749. "Private acts of parliament conferring new and extraordinary powers of a special nature upon particular persons, affecting the property ·of individuals, or giving exemption from a general burden attaching by law upon ·all parties, should receive a strict interpretation." Ib. p. 750.

Let us now consider this clause of the plaintiffs' charter, with reference to the principles thus announced. If the words of the act are fairly susceptible of another interpretation—if they do not necessarily and unequivocally adopt the provision in relation to married women, that provision must be held to be excluded from the meaning of the charter. The language of the act is, the bank shall have the like privileges, &c. Now let us examine what privileges were conferred upon the Bank of Louisiana in relation to mortgages: The 16th section of the charter of that bank prescribes the amount to be loaned on mortgage, and the value and nature of the property on which such such loans must be made ; section 26 declares how mortgage loans shall be received and paid ; section 30, that the loan shall not be paid until the mortgage shall have been recorded ; section 31, that the bank may seize the property in whatever hands it may pass ; section 34, that the bank shall not be delayed by a judicial respite ; section 35, that the mortgaged property shall not pass to syndics or assignees of an insolvent ; and section 32, that in all mortgages, &c., it shall be lawful for the wife to bind herself, etc. 1 Moreau's Dig. Now all the above provisions, save the last, are in terms as well as substance, privileges given to the bank, while the last is in terms a privilege granted to married women. In 1824, and for many years after, the legislation and policy of this State evidently favored the obtaining of money on loans on long terms, even at high interest. Such an opinion was entertained of the fertility of our soil and the extent of our commerce, that interest was not regarded, and money was eagerly sought for on any terms, provided a long time was given for its reimbursement. The exemption of married women from their contracts, and the mortgages allowed them upon the estates of their husbands, had the double effect of diminishing on one band the desire of capitalists to loan money even at the Louisiana rates, and on the other hand to limit the ability of our citizens to obtain loans. Hence the restrictions upon contracts of married women, though so thoroughly incorporated into our laws, became for the time unpopular; their original object was forgotten, and they began to be considered burthensome and impolitic ; though intended to be a protection, they were regarded as a disability, and it came to be considered a valuable privilege that married women should be allowed to borrow. Without this provision the class of borrowers dealing with the banks would have been more limited ; greater particularity would have been required in ascertaining the rights of wives, and in lending to husbands only on unencumbered property; but the right of the bank so to loan, to take security and enforce payment, would still have been protected. That the charter would have been highly valuable without giving to married women such rights, is obvious from the fact that one of the banks, with whom they cannot so contract, has been for many years and is still in successful operation. The reference relied upon may therefore be considered as met and filled by the several provisions more strictly designated as privileges of the bank, and appertaining to the mode of taking securities and enforcing the mortgages.

The question is not merely whether by intendment this privilege of married

women may not have been designed to be re-enacted in the plaintiffs' charter, but whether that intention is clearly and unequivocally expressed. In many statutes, particularly those intended to remedy an evil, or to prevent wrong or injustice, it is the duty of the courts to supply deficiencies in the language of the law; but this does not apply to a charter of incorporation. It is granted not for the public benefit, but for the emolument of the shareholders. It confers upon a few a portion of the rights belonging to the sovereign, and creates peculiar and exclusive privileges. Such a grant must always be strictly construed, and the privileges embraced are not to be aided by the ingenuity of judges. " It is a well settled rule that every charge upon the subject must be imposed in clear and unambiguous language." Dwarris on Statutes, p. 749. The fact that out of twelve banks claiming the right to receive mortgages from married women, all of them save the plaintiffs' and one other, have received the grant in express and unequivocal terms, and without reference from one charter to another, should also have its weight. We must presume that, if it had been intended to confer the privilege of borrowing upon such persons, it would have been so expressed in this as in the other charters. " When in several statutes *in pari materia* the legislature is found sometimes inserting and sometimes omitting a clause of relation, it is to be presumed that their attention has been drawn to the point, and that the omission is designed ; but if it were not intended, said *Lord Ellenborough* in *R. Skone*, we can only say of the legislature, *quod voluit, non dixit.*" Dwarris on Statutes, p. 707.

There is another reason for a strict interpretation of such acts. They are always granted at the solicitation of parties having a direct and pecuniary interest in obtaining them. These parties always cautiously prepare the draft of their charters ; it is therefore incumbent on them to state clearly what they ask. " I consider it an established and highly useful rule in the construction of all acts of parliament of a local or personal nature, to require that the persons soliciting such an act, should state in it plainly, distinctly and unequivocally, what they mean, in order that the public on one hand and the legislature on the other, may not be taken by surprise, and may not be left in doubt, as to the object and effect of the enactment." *Bailey J., Doe* v. *Brandling*, 1 Mann. and Ryl. 611, cited and approved by Walworth, Chan. in *Cayuga Bridge* v. *Magee*, 2 Paige Ch. Rep. 121. We must therefore conclude that the general policy of the law protecting married women from the improvidence of their husbands, has not been infringed in the plaintiffs' charter ; that the power of wives to bind themselves for their husbands, is not given in plain, distinct and unequivocal terms, and consequently does not exist.

The constitution of 1812, art. 4, sec. 11, provides : " That the legislature shall never adopt any system or code of laws by a general reference to said system or code, but in all cases shall specify the several provisions of the law it may enact." This provision was unquestionably intended to prevent the adoption of the common law in this State by a statute of reference. But this object is accomplished by the first clause of the proviso, and the constitution proceeds to say that in all cases the provisions of the laws intended to be enacted shall be specified. Although the desire to exclude the common law gave rise to this restriction, the attention of the convention once drawn to the subject, the provision was extended as to prevent improvident legislation in other cases. The French text makes this more apparent: " et que dans tous les cas elle devra décréter spécialement toute les dispositions de lois qu'elle pourra faire." This is a constitutional restriction of legislative will. A passion for law-making is certainly one of the greatest evils of our system. The constitution could not suppress this evil, but attempts to limit and control it. In order to secure the deliberate attention of legislators to the labors entrusted to them, they are prohibited from enacting by mere reference, and are enjoined to specify the provisions which they intend to adopt as laws. The acts of former legislatures, as well as foreign laws, must be included in this provision. Another object of the constitution was to make the law more accessible to the citizen. The intention of the legislature must be unequivocally expressed, to support a grant of an extraordinary power to a corporation. It must also be constitutionally expressed. If by reference, the number of the section and date of the law should always be given, and the terms intended to be adopted should be so clearly stated as to make doubt impossible, or else the provisions adopted are not specified in the mode prescribed by the constitution. In the plaintiffs' charter it is

Mechanics
and Traders
Bank
*v.*
Rowly.

said that, "this bank shall have like privileges, &c., with another." Neither the date of the act, nor the number of the sections, thus intended to be incorporated, is given; and there is no description or specification of the nature or extent of these privileges. Other privileges appertaining to the same subject are then copied at large into the charter, thus inducing the natural belief that the privileges so specified were the same intended by the clause of reference.

The judgment of the court was pronounced by

Eustis, C. J. This is a case in which the husband and wife bound themselves jointly and severally in a promissory note to the plaintiffs, and executed a mortgage simultaneously to secure the payment of it. The amount they acknowledge to have received in the act of mortgage, which contains a formal renunciation of the rights of the wife.

The charter of the *Mechanics' and Traders' Bank* confers on that corporation similar privileges to those conferred on the *Bank of Louisiana* in making loans on mortgages, taking security, and enforcing the payment thereof.

The rights which the latter institution would have in a case of this kind we have determined in the suit of the *Bank of Louisiana* v. *Farrar*, 1 An. Rep. 49.

To grant a new trial on the showing of the appellant in her very informal affidavit, would be an undue interference with that discretion which judges of the first instance are, from their opportunities, best qualified to exercise.

*Judgment affirmed.*